UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on June 14, 2024

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**MANOUSOS BAILAKIS and<br>IOANNIS GELASAKIS,**<br><br>Defendants. | CRIMINAL NO.<br><br>MAGISTRATE NO. 25-MJ-27 (ZMF)<br><br>**VIOLATIONS:**<br>18 U.S.C. § 371<br>(Conspiracy)<br>18 U.S.C. §§ 666, 2<br>(Federal Funds Bribery)<br><br>**FORFEITURE:**<br>18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p);<br>28 U.S.C. § 2461(c) |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and at the approximate times stated below:

### Introduction

1. The charges in this Indictment arise from a scheme in which Defendants, MANOUSOS BAILAKIS and IOANNIS GELASAKIS, conspired to bribe a North Atlantic Treaty Organization ("NATO") procurement official ("Individual 1"). The purpose of the conspiracy was to bribe Individual 1 in order to influence Individual 1 in connection with potential and actual business that BAILAKIS and GELASAKIS' ship husbanding company, Global Defense Logistics ("GDL"), had before the NATO Support and Procurement Agency ("NSPA"). As part of the scheme, BAILAKIS and GELASAKIS paid Individual 1 bribes totaling €130,000, and promised Individual 1 additional bribe payments, so that: (1) GDL would win certain NSPA ship

husbanding contracts, including a fuel contract valued at up to €450,000,000, of which GDL could receive half; (2) GDL would gain an advantage regarding NSPA contracts for the United States Army and, potentially, Navy customers; and (3) NSPA would approve GDL's outstanding invoices.

## Background

2.   NATO is a political and military alliance among 32 member nations, including the United States. It promotes democratic values, enables members to consult and cooperate on defense and security-related issues, and prevents conflict. NATO member nations are bound by treaty to each other's collective defense. The United States contributes hundreds of millions of dollars annually to NATO, the most out of any member state.

3.   NSPA is responsible for NATO's acquisition of goods and services, among other responsibilities. NSPA issues contracts for purchases on behalf of the alliance and member states, including the purchase of ship husbanding and other services. The United States is a major funder of NSPA. For example, in 2023, the proposed amount of U.S. funding for NSPA headquarters operations was $1,476,494, or approximately 16% of its operational budget.

4.   At all times relevant to this Indictment, NATO and NSPA were each organizations that received federal benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, in a relevant one-year period, within the meaning of Title 18, United States Code, Section 666(d)(5).

5.   When NATO ships make port visits, NSPA hires contractors to provide refueling, restocking of provisions, and other services. These services are collectively known as ship husbanding services, and the contractors are known as ship husbanding service providers.

6. GDL is a Romanian company that provides ship husbanding services, among other services. GDL maintains offices and has subcontractors worldwide.

7. Defendant MANOUSOS BAILAKIS is a citizen of Greece and resides in Greece. BAILAKIS has no residence or last known residence in the United States. BAILAKIS appears to be the Chief Operations Officer of GDL.

8. Defendant IOANNIS GELASAKIS is a citizen of Greece and resides in Greece. GELASAKIS has no residence or last known residence in the United States. GELASAKIS appears to be the Chief Executive Officer of GDL, as well as a part owner of GDL.

9. Individual 1 is a NATO procurement official employed at NSPA. Individual 1's responsibilities include making recommendations in awarding NSPA ship husbanding contracts, as well as being involved in paying invoices pursuant to those contracts. Individual 1 is an agent of both NATO and NSPA, within the meaning of Title 18, United States Code, Section 666(d)(1).

## COUNT ONE
### (Conspiracy to Defraud the United States—18 U.S.C. § 371)

10. The allegations contained in Paragraphs 1 through 9 of this Indictment are re-alleged and fully incorporated here by reference.

### The Conspiracy

11. Beginning on a date unknown to the grand jury but no later than in or about June 2024, out of the jurisdiction of any particular State or district, and continuing until at least in or about February 2025, the Defendants,

**MANOUSOS BAILAKIS, and**
**IOANNIS GELASAKIS,**

did knowingly combine, conspire, confederate, and agree with each other and co-conspirators known and unknown to the Grand Jury, to commit an offense against the United States—that is,

to corruptly give, offer, and agree to give things of value to Individual 1, an agent of an organization, specifically NATO and NSPA, intending to influence and reward Individual 1, in violation of Title 18, United States Code, Section 666(a)(2), as charged in Counts Two, Three, and Four of this Indictment.

## Purpose of the Conspiracy

12. The purpose of the conspiracy was for Defendants to pay bribes to Individual 1 in order to influence Individual 1 and obtain favorable treatment in connection with potential and actual business that GDL had with NATO and NSPA.

## Manner and Means of the Conspiracy

13. It was part of the conspiracy that:

   a. Defendants contacted Individual 1 through telephone and encrypted messaging applications WhatsApp and Signal.

   b. Defendants arranged and attended in-person meetings with Individual 1.

   c. During their communications, Defendants asked Individual 1 to exert influence and act for the benefit of GDL, so that NSPA would award GDL upcoming ship husbanding contracts, and so that NSPA would approve outstanding invoices for ship husbanding services rendered.

   d. During their communications, Defendants also asked Individual 1 to exert influence and act for the benefit of GDL, in connection with the possibility that the U.S. Navy would use the NSPA contracting process for a trial period. Defendants asked Individual 1 to help steer such an agreement to a region where GDL was active.

  e. During their communications, Defendants also asked Individual 1 to use his position to obtain NSPA information regarding a NSPA contract for the U.S. Army that GDL did not win.

  f. During their communications, Defendants promised Individual 1 cash bribes in exchange for influence and acts on GDL's behalf.

  g. Defendants actually paid a total of €130,000 in cash bribes to Individual 1 during in-person meetings.

  h. Defendants undertook efforts to conceal the conspiracy through various methods, including paying the bribes in cash, refusing to pay the bribes using non-cash methods, using coded language to discuss the conspiracy, and using encrypted applications.

### Overt Acts

14. On or about June 18, 2024, BAILAKIS and GELASAKIS met with Individual 1 at a hotel in Luxembourg and offered to pay Individual 1 €200,000 in exchange for Individual 1's influence and acts regarding NSPA procurement activities.

15. On or about June 25, 2024, BAILAKIS had a telephone call with Individual 1 in which they discussed a pending invoice totaling upwards of €8 million that GDL had submitted for certain ship husbanding services provided to a NATO member nation through NSPA in Skagen, Denmark.

16. On or about July 12, 2024, BAILAKIS and GELASAKIS met with Individual 1 in Frankfurt, Germany at Hotel 1 in a private hotel room.

17. On or about July 12, 2024, as part of that meeting, GELASAKIS and BALAKIS requested that Individual 1 help GDL secure the award of approximately half of the areas of operation ("AOOs") under the €450 million fuel contract.

18. On or about July 12, 2024, as part of that meeting, GELASAKIS and BALAKIS requested that Individual 1 help GDL receive payments of approximately €5 million on outstanding invoices from Skagen.

19. On or about July 12, 2024, as part of that meeting, BAILAKIS retrieved the cash payment from a different hotel.

20. On or about July 12, 2024, as part of that meeting, once BAILAKIS returned to Hotel 1, BAILAKIS gave two envelopes of cash, each with €25,000 (€50,000 in total), to Individual 1. A photograph of the cash BAILAKIS delivered to Individual 1 on or about July 12, 2024 is shown below:



21. On or about July 12, 2024, as part of that meeting, BAILAKIS offered to give Individual 1 more money in the future and called future meetings "fishing trips."

6

22. On or about July 21, 2024, BAILAKIS sent an encrypted Signal message to Individual 1 "proposing to go for a fishing [in the] early days of August" and reiterating that he needed "help with Skagen" to get GDL paid for the invoices. BAILAKIS requested the switch to Signal because it was much more secure, according to BAILAKIS.

23. On or about September 10, 2024, BAILAKIS and GELASAKIS again met with Individual 1 in Frankfurt, Germany but at Hotel 2 in a conference room rented by Individual 1.

24. On or about September 10, 2024, as part of that meeting, GELASAKIS reiterated that GDL wanted to win the fuel contract and offered Individual 1 a payment of €1 million if they were awarded certain AOOs of that contract.

25. On or about October 9, 2024, BAILAKIS and GELASAKIS again met with Individual 1 in Frankfurt, Germany at Hotel 2 in a conference room arranged by BAILAKIS and GELASAKIS.

26. On or about October 9, 2024, as part of that meeting, BAILAKIS and GELASAKIS requested that Individual 1 exert influence and act so that NSPA would award GDL certain AOOs under the fuel contract and that the CHS obtain information about the Skagen invoices.

27. On or about October 9, 2024, as part of that meeting, BAILAKIS, GELASAKIS, and Individual 1 also discussed the U.S. Navy potentially using the NSPA procurement process for a trial period, and BAILAKIS and GELASAKIS asked Individual 1 to help steer such an agreement to a region where GDL was active.

28. On or about October 9, 2024, as part of that meeting, BAILAKIS, GELASAKIS, and Individual 1 discussed a NSPA contract for the U.S. Army regarding the cleaning of land vehicles that GDL did not win. BAILAKIS and GELASAKIS asked Individual 1 to use his position at NSPA to find out if the company that won had the proper certifications.

29.     On or about October 9, 2024, as part of that meeting, BAILAKIS, with GELASAKIS's knowledge, gave Individual 1 €50,000 in cash, as depicted in the photograph below:



30.     On or about October 9, 2024, as part of that meeting, GELASAKIS, in the presence of BAILAKIS, also offered Individual 1 €330,000 per year for three years if GDL was awarded certain AOOs of the €450 million fuel contract.

31.     On or about January 29, 2025, BAILAKIS and Individual 1 met at a hotel in Bucharest, Romania. During the meeting, BAILAKIS gave Individual 1 €30,000. A photograph of the €30,000 is below:



In violation of Title 18, United States Code, Section 371.

### COUNTS TWO, THREE, and FOUR
### (18 U.S.C. §§ 666(a)(2), 2—Federal Funds Bribery)

32.     The allegations contained in paragraphs 1 through 31 of this Indictment are re-alleged and fully incorporated here by reference.

33.     On or about the dates set forth below, out of the jurisdiction of any particular State or district, the Defendants,

**MANOUSOS BAILAKIS, and**
**IOANNIS GELASAKIS,**

aiding and abetting each other, did corruptly give, offer, and agree to give things of value to Individual 1, intending to influence and reward Individual 1, an agent of an organization, to wit NATO and NSPA, in connection with business, a transaction, and series of transactions of those organizations having a value of $5,000 or more, while such organizations each received in a relevant one year period Federal benefits in excess of $10,000, that being cash bribe payments in the amounts set forth below:

9

| Count | Date | Approximate Amount |
|---|---|---|
| 2 | July 12, 2024 | €50,000 |
| 3 | October 9, 2024 | €50,000 |
| 4 | January 29, 2025 | €30,000 |

In violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## Criminal Forfeiture Allegations

34. Counts One through Four of this Indictment are re-alleged here for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(l)(C), and Title 28, United States Code, Section 2461(c).

35. Upon conviction of any of the offenses alleged in the Indictment, Defendants MANOUSOS BAILAKIS and IOANNIS GELASAKIS shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against Defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

36. If the property identified above as being subject to forfeiture, as a result of any act or omission of Defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

Defendants shall forfeit to the United States any other property of Defendants, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(Criminal Forfeiture, Title 18, United States Code, § 981(a)(1)(C), and Title 28, United States Code, § 2461(c)); and Title 21, United States Code, § 853(p)).

Dated:

A TRUE BILL

_____
FOREPERSON

_____  
OMEED A. ASSEFI  
Acting Assistant Attorney General

_____  
SEAN FARRELL  
Chief, New York Office

_____  
RYAN D. BUDHU  
ALLISON MILEO GORSUCH  
SHIRIN MAHKAMOVA  
Trial Attorneys

DAVID CHU  
Assistant Chief, New York Office

Antitrust Division  
U.S. Department of Justice  
New York Office  
201 Varick St. Room 1006  
New York, NY 10014